**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Walter Siggins, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 1:21-cv-3975 |
| Discover Financial Services, | ) ) ) | |
| Defendant. | ) | <u>Jury Demanded</u> |

**COMPLAINT**

Plaintiff, Walter Siggins, brings this action under the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA"), for a finding that Defendant's actions violated the FCRA, and to recover damages, and alleges:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction pursuant to § 1681, et seq., of the FCRA, and 28 U.S.C. § 1331.

2. Venue is proper in this District because: a) the acts and transactions occurred here; b) Plaintiff resides here; and, c) Defendant conducts business here.

**PARTIES**

3. Plaintiff, Walter Siggins ("Siggins"), is an individual who was at all relevant times residing in the town of Lynwood, Cook County, State of Illinois.

4. At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1681a(c).

5. Discover Financial Services ("Discover") is a business entity engaged in providing financial services and offers of credit to consumers within the State of Illinois.

6. At all relevant times, Defendant was a "person" as that term is defined by 15 U.S.C. §1681a(b).

## FACTUAL ALLEGATIONS

7. Credit reports, as alleged in this pleading, are "consumer reports" as that term is defined by 15 U.S.C. §1681a(d).

8. Prior to July 24, 2020, Plaintiff had an account with Defendant.

9. Plaintiff's account with Defendant was for a personal loan account.

10. On July 24, 2020, Plaintiff filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Illinois ("Bankruptcy Court") in the matter styled, In re: Siggins, No. 20-14491.

11. At the time Plaintiff filed his Bankruptcy, he owed a debt (the "Debt") to Defendant.

12. Plaintiff scheduled the Debt in his Bankruptcy Petition, and Defendant was sent electronic notice thereof by the Bankruptcy Court on July 28, 2020.

13. At the time Plaintiff filed his bankruptcy petition, he owed no other debts to Defendant aside from the account that was included in his bankruptcy.

14. At the time Plaintiff filed his bankruptcy petition, he had no other accounts with Defendant, aside from the account that was included in his bankruptcy.

15. On or about October 21, 2020, the Bankruptcy Court entered an order discharging Plaintiff's debts, thereby extinguishing his liability for the Debt (hereinafter, "the Discharge Order").

16. When the Bankruptcy Court entered the Discharge Order, the debtor-creditor relationship between Plaintiff and Defendant ended as to the Debt.

17. Moreover, at the time of Plaintiff's discharge, there were no assets in the bankruptcy estate from which to make any distribution to Plaintiff's potential creditors.

18. Given that Plaintiff's bankruptcy discharge resulted in a Report of No Distribution (<u>i.e.</u>, Plaintiff had no assets in his estate to distribute to any creditors), any unsecured debts that were incurred prior to the filing of Plaintiff's bankruptcy petition are considered discharged, irrespective of whether the debt was specifically listed in Plaintiff's schedule of creditors, filed as part of his Bankruptcy Petition.

19. The Debt, and any other account(s) Plaintiff had with Defendant, or that had been assigned to Defendant, and that had been incurred prior to the date Plaintiff filed his Bankruptcy Petition, were effectively discharged as of the date of the Discharge Order.

20. On or about October 22, 2020, the Bankruptcy Court electronically served a Certificate of Notice on Defendant, which included a copy of the Discharge Order.

21. As of October 22, 2020, Defendant was effectively put on notice that any debt incurred prior to the filing of Plaintiff's Bankruptcy Petition was discharged.

22. At no time since October 22, 2020, has Plaintiff owed any debt to Defendant.

23. At no time since October 22, 2020, has Plaintiff opened any accounts with Defendant.

24. At no time since October 22, 2020, has Plaintiff had any personal business relationship with Defendant.

25. Given the facts delineated above, at no time since October 22, 2020, has Defendant had any information in its possession to suggest that Plaintiff owed a debt to

Defendant.

26. Given the facts delineated above, at no time since October 22, 2020, has Defendant had any information in its possession to suggest that Plaintiff was responsible to pay a debt to Defendant.

27. TransUnion (hereinafter, "TransUnion") is a consumer reporting agency as that term is defined by 15 U.S.C. § 1681a(f). TransUnion is a data repository that assembles and stores information on consumers for the purpose of furnishing consumer reports to third parties.

28. Consumer reports contain personal, private, and highly confidential information, including: (i) different variations of an individual's full name, including middle name and/or middle initial(s); (ii) current address at which an individual resides; (iii) previous address(es) at which an individual had resided; (iv) social security number; (v) date of birth; (vi) current telephone number; (vii) previous known telephone number(s); (viii) current employer; (ix) former employer(s); (x) public records; (xi) account histories with all reporting creditors, including, but not limited to, home loans, car loans, credit cards, charge cards, and store cards; and, (xii) records of requests for a consumer report by third parties (hereinafter collectively, "Confidential Information").

29. Given the overwhelming scope of the information available when one procures a consumer report about another, in 1970 Congress enacted the FCRA to protect consumer privacy by requiring consumer reporting agencies to, _inter alia_, limit the furnishing of consumer reports to statutorily enumerated purposes only, see, TRW Inc., v. Andrews, 534 U.S. 19, 23 (2001). The statute was created in response to "concerns about corporations' increasingly sophisticated use of consumers' personal

information in making credit and other decisions", see, Syed v. M-I, LLC et al., 846 F.3d 1034, 1037 (9th Cir. 2017)(citing the FCRA, Pub.L. 91-508, Section 602, 84 Stat. 1114, 1128); see also, United States v. Bormes, 568 U.S. 6, 7 (2012) (The Fair Credit Reporting Act has as one of its purpose is to "protect consumer privacy" (quotation and citation omitted)); Cole v. U.S. Capital, 389 F.3d 719, 723 (7th Cir. 2004) ("In [§1681] Congress made it clear that the FCRA is designed to preserve the consumer's privacy in the information maintained by consumer reporting agencies.").

30. When it enacted the FCRA, Congress found, among other things, that "[t]here is a need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy", see, 15 U.S.C. § 1681(a)(4).

31. Tasked with protecting a consumer's privacy, the FCRA governs who can access consumer report information from credit reporting agencies and for what purpose. To that end, the FCRA enumerates certain "permissible purposes" for accessing credit reports.

32. Defendant is a subscriber and user of consumer reports issued by TransUnion.

33. Defendant also furnishes data to TransUnion about its experiences with its customers and potential customers.

34. Defendant is a "furnisher" of information as contemplated by the FCRA, 15 U.S.C. § 1681s-2(a) & (b), in that it regularly and in the ordinary course of its business furnishes information to one or more consumer reporting agencies about its transactions and/or other experiences with consumers. Defendant has a symbiotic relationship with

5

TransUnion such that it furnishes information to TransUnion regarding its transactions and/or other experiences with consumers, while also purchasing from TransUnion information about its customers and other consumers.

35. On or about December 31, 2020, despite being cognizant of the facts as delineated above, Defendant procured from TransUnion a copy of Plaintiff's consumer report at which time, Defendant made a general or specific certification to TransUnion that Defendant sought the consumer report in connection with a business transaction initiated by Plaintiff, to review an account to determine whether Plaintiff continued to meet the terms of said account, or for some other permissible purpose enumerated by the FCRA.

36. The certification made by Defendant to TransUnion was false.

37. Despite certifying to TransUnion that it had a permissible purpose for procuring Plaintiff's consumer report, Defendant had no such permissible purpose.

38. At no time on or prior to December 31, 2020, did Plaintiff consent to Defendant obtaining his consumer report.

39. On or about December 31, 2020, despite being cognizant of the facts as delineated above, Defendant impermissibly procured from TransUnion Plaintiff's individual and personal credit report.

40. On or about December 31, 2020, at the time Defendant impermissibly procured from TransUnion Plaintiff's individual and personal credit report, Plaintiff's Confidential Information was published to Defendant.

41. On or about December 31, 2020, at the time Defendant impermissibly procured from TransUnion Plaintiff's individual and personal credit report, Defendant

reviewed Plaintiff's Confidential Information.

42. On or about December 31, 2020, at the time Defendant impermissibly procured from TransUnion Plaintiff's individual and personal credit report, unknown employees, representative and/or agents of Defendant viewed Plaintiff's Confidential Information.

43. On or about December 31, 2020, at the time Defendant impermissibly procured from TransUnion Plaintiff's individual and personal credit report, Defendant obtained information relative to Plaintiff's credit history and credit worthiness.

44. Plaintiff has a right to have his Confidential Information kept private.

45. No individual/entity is permitted to obtain and review Plaintiff's personal and confidential information unless Plaintiff provides his consent for the release of the information, or the individual/entity has a permissible purpose to obtain the confidential information as enumerated by the FCRA.

46. Defendant procured from TransUnion Plaintiff's consumer report without his knowledge or consent.

47. Defendant procured from TransUnion Plaintiff's consumer report without a permissible purpose.

48. By its actions, when Defendant impermissibly procured from TransUnion Plaintiff's individual and personal credit report, Defendant invaded Plaintiff's privacy.

49. By its actions, when Defendant impermissibly procured from TransUnion Plaintiff's individual and personal credit report, Defendant effectively intruded upon the seclusion of Plaintiff's private affairs.

50. When Plaintiff discovered that Defendant had procured his personal,

7

private and confidential information from TransUnion, Plaintiff was extremely angry, frustrated and suffered emotional distress resulting from Defendant's invasion of his privacy. When Plaintiff discovered that Defendant had procured his personal, private and confidential information from TransUnion, Plaintiff was extremely worried, concerned and frustrated that Defendant's impermissible access of his personal, private and confidential information from one or more consumer reporting agency could continue indefinitely.

51. When Plaintiff discovered that Defendant had procured his Confidential Information from TransUnion, Plaintiff was concerned about the continued security and privacy of his Confidential Information.

52. When Plaintiff received his Discharge Order from the Bankruptcy Court, he rightfully believed that his business relationship with Defendant had come to an end. When Plaintiff discovered that Defendant had procured his Confidential Information after it had been sent notice of Plaintiff's bankruptcy discharge, Plaintiff believed that Defendant would continue to act with impunity and continue to procure his Confidential Information indefinitely.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Walter Siggins, by and through his attorneys, respectfully prays for Judgment to be entered in his favor and against Defendant as follows:

a. All actual and compensatory damages suffered;

b. Statutory damages of $1,000 for Defendant's violation of the FCRA;

c. Punitive damages;

d. Plaintiff's attorneys' fees and costs; and,

e.  All relief deemed appropriate by this Court.

## JURY DEMAND

Plaintiff, Walter Siggins, demands trial by jury.

                Walter Siggins,

                By:/s/ David J. Philipps
                One of Plaintiff's Attorneys

Dated: July 27, 2021

David J. Philipps    (Ill. Bar No. 06196285)
Mary E. Philipps     (Ill. Bar No. 06197113)
Angie K. Robertson (Ill. Bar No. 06302858)
Philipps & Philipps, Ltd.
9760 S. Roberts Road
Suite One
Palos Hills, Illinois 60465
(708) 974-2900
(708) 974-2907 (FAX)
davephilipps@aol.com
mephilipps@aol.com
angie@philippslegal.com